CLERK'S COPY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED

UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

99 JUL 30 AM 10: 35

*Robert M. March*
CLERK-SANTA FE

WILLIAM ELLSWORTH,

    Plaintiff,

vs.

    No. CIV 98-906 MV/DJS

ALBUQUERQUE PUBLIC
SCHOOLS,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment, filed April 1, 1999 [**Doc. 15**]. The Court, having considered the motion, response, reply, relevant law, and being otherwise fully informed, finds that the motion is not well taken and will be **DENIED**, as explained below.

### BACKGROUND

Plaintiff William Ellsworth ("Ellsworth") here brings suit against his former employer, Defendant Albuquerque Public Schools ("APS"), alleging employment discrimination on the basis of disability in violation of the Americans With Disabilities Act, the Rehabilitation Act and the Equal Protection and Due Process Clauses of the U.S. Constitution.

For the purpose of resolving this motion, the Court finds that the following are the undisputed material facts:

1.    APS hired Ellsworth as a special education teacher for a one year term, beginning August 8, 1995.

*23*

2. Ellsworth tested positive for HIV in 1985, but remained largely a-symptomatic for the next ten years.

3. On September 5, 1995, Ellsworth was hospitalized for acute non-Hodgkins lymphoma, a condition related to his HIV-status. He required surgery and extensive treatment. In fact, his doctors did not expect him to recover and described his condition as "terminal."

4. On September 11, 1995, Ellsworth applied for paid sick leave from September 1, 1995, to October 31, 1995. His illness was identified only as lymphoma.

5. APS approved Ellsworth's request for paid sick leave for this period.

6. On October 22, 1995, Ellsworth requested unpaid medical leave for one-year. This request was accompanied by a letter from his doctor indicating that Ellsworth was incapacitated due to "chronic non-Hodgkins Lymphoma." An insurance form dated October 5, 1995, prepared by Ellsworth's doctor and submitted to APS, also states, "Pt. [patient] is terminal," and "no recovery is expected."

7. On November 3, 1995, APS granted Ellsworth the requested medical leave for the 1995-96 school year. The letter granting leave instructed Ellsworth to inform APS by March 1, 1996, if he would be returning to work. The letter further stated, "[i]f you wish to return but are unsure by the notification deadline, please let us know that you intend to return so that we can hold your position for you. If, at a later date, you find that you are unable to return, please notify us as soon as possible of your intent to resign."

8. Ellsworth did not respond by the March 1st deadline. Nevertheless, on March 6, 1996, APS Superintendent of Human Resources, Judith Keller ("Keller") sent Ellsworth a letter giving him until March 16, 1996, to inform APS whether he would be returning to work.

9.     On March 12, 1996, Ellsworth sent APS a letter which reads in its entirety as follows: "[a]lthough I am still disabled at this time, I do intend to return to work with APS as soon as I am able. I suffer from cancer and will have to undergo another operation in the near future. If you require information from my doctor, please let me know. Please extend my medical leave."

10.     On receipt of this letter, APS extended Ellsworth's medical leave for another year, until October 31, 1997.

11.     In late March, 1996, Ellsworth's doctor submitted an insurance form to APS which identified his condition as "HIV---> AIDS, Intestinal Lymphoma." The form further stated that Ellsworth's condition was improving and that he might be able to return to work part-time in August, 1996.

12.     On July 15, 1996, Ellsworth sent APS a letter advising that he had fully recovered and could now return to work.

13.     The APS contract with the teacher's union provides that a teacher may be granted unpaid medical leave, "up to one (1) year." The contract further states that an employee returning from an extended leave "shall be reassigned to the original teaching position or, if that position is no longer available, to a substantially equivalent position."

14.     Keller states that APS's policy is that when an employee returns "early" from medical leave, he is not automatically placed into the same position. Rather, if the employee's prior position is filled, the employee must interview and compete competitively for any openings which may be available.

15.     Keller informed Ellsworth that his prior teaching position at Rio Grande High School was filled and that he would need to interview for other available positions. Ellsworth was given the name of at least four schools with openings.

16.     Ellsworth states that after much difficulty, he completed interviews at four schools in the APS system. Pursuant to the instructions of the human resources department, Ellsworth explained to each interviewer that he was returning from extended medical leave.

17.     Ellsworth also stated that during these interviews, he noticed that "801" was marked in red ink on his file. Keller states that "801" is the code for employees returning from extended leave.

18.     Ellsworth was not given a position at any APS school for the 1996-97 term.

19.     Ellsworth subsequently relocated to Texas. In August, 1997, Ellsworth sent APS a letter indicating that he wished to return to work.

20.     On September 9, 1997, Ellsworth sent Keller another letter describing the difficulty he had been having with returning to work and stating that he felt he was being discriminated against because of his HIV-status.

21.     Keller states that she did not know Ellsworth was HIV-positive until she received this letter. Defendant also provides the affidavits of several APS principals who also state that they did not know Ellsworth or anyone else they ever interviewed was HIV-positive. Oddly, none of these principals specifically recalls interviewing Ellsworth.

22.     On September 29, 1997, Keller sent Ellsworth a letter stating that he could return to work at the end of his leave, on October 31, 1997, or sooner if he was able. Keller stated that Ellsworth's prior position at Rio Grande was available as well as a second position if he preferred.

4

23.     Ellsworth responded by letter indicating that he was interested in the Rio Grande position but that because (in his opinion) he had been treated unfairly, he wanted to receive back pay for the 1996-97 school year, in order to provide for his moving expenses to relocate to Albuquerque.

24.     Keller informed Ellsworth that APS would not pay him for the previous year since he did not work and that if he did not appear for work by November 3, 1997, APS would conclude that he did not want the position.

25.     Ellsworth did not report for work by November 3rd. APS sent him a letter on November 7, 1997, stating that they considered him to have abandoned the position, constituting a voluntary resignation.

## STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1). Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B&B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex*,

477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United States*, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322.

## ANALYSIS

Defendant APS argues in its motion that summary judgment in its favor is appropriate primarily because Plaintiff cannot establish a *prima facie* case of discrimination based on disability. Specifically, APS argues that there is no evidence that Plaintiff suffered an adverse employment action and no evidence that anyone at APS knew of his disability when it acted. Defendant also argues that Plaintiff cannot establish an equal protection violation because there is no evidence of intentional discrimination. Plaintiff refutes these assertions.

Claims of discrimination under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act are reviewed under the analytic framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Hardy v. S.F. Phosphates Limited Company*, __ F.3d __, 1999 WL 401722, at *2 (10th Cir. 1999); *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997). As the Tenth Circuit recently explained,

[u]nder this framework, the plaintiff has the burden of articulating a prima facie case of discrimination. The burden of production then shifts to the employer to articulate a legitimate nondiscriminatory reason for taking the adverse action against the plaintiff. The burden then shifts back to the plaintiff to present evidence such that a reasonable jury could conclude that the proffered nondiscriminatory reason for the employment action is pretextual, that is, unworthy of belief.

*Hardy,* __ F.3d __, 1999 WL 401722, at *2 (quotation marks and citations omitted); *see also Simms v. Oklahoma ex rel. Dep't of Mental Health and Substance Abuse Servs.,* 165 F.3d 1321, 1328 (10th Cir.1999); *Morgan,* 108 F.3d at 1323. However, "[t]he plaintiff need not present direct evidence of illegal discriminatory animus to survive summary judgment." *Hardy,* __ F.3d __, 1999 WL 401722, at *2 (citing *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995)).

In order to establish a *prima facie* case under the ADA and the Rehabilitation Act, a plaintiff must demonstrate: "(1) she is a disabled person within the meaning of the ADA; (2) she is qualified to perform the essential functions of the job with or without reasonable accommodations; and (3) the employer terminated her employment because of her alleged disability," or she suffered other adverse employment action. *Hardy,* __ F.3d __, 1999 WL 401722, at *3; *Powers v. MJB Acquisition Corporation,* __ F.3d __, 1999 WL 476011 at *3 (10th Cir.1999); *Woodman v. Runyon,* 132 F.3d 1330, 1337 (10th Cir.1997); *White v. York Int'l Corp.,* 45 F.3d 357, 360-61 (10th Cir.1995).

In the present case, Defendant does not dispute that Plaintiff is disabled and that he is qualified for the position, with or without accommodation. *See Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 2202, 2204, 141 L.Ed.2d 540 (1998) (finding that even asymptomatic HIV is a qualifying disability). Defendant argues that Plaintiff cannot prove the third prong of his *prima facie* case because there is no evidence that he suffered an adverse employment action and no evidence that the APS employees knew of his HIV-status.

The Court will not tarry long on the first point. APS failed to employ Ellsworth for the 1996-97 school year, despite the fact that he was willing and able to do work and despite the fact that his contract with APS entitled him to return to work. This is obviously an adverse employment action.

As to the second point, Defendant's proffered affidavits establish only that no one knew Ellsworth suffered from HIV or AIDS specifically. Defendant has presented no evidence that APS employees did not know he suffered from a potentially terminal, seriously debilitating disease. Indeed, the undisputed facts indicate that the APS human resources personnel were well aware of the fact that Ellsworth suffered from lymphatic cancer, even if they did not know of the connection with HIV. Moreover, Ellsworth was specifically instructed to inform each and every person he interviewed with at APS that he was returning from medical leave and his personnel file contained a prominent notation that he had been on extended leave. The Court finds this to be sufficient evidence to establish a *prima facie* case of employment discrimination based on disability. *See Hardy*, __ F.3d __, 1999 WL 401722, at *3.

Defendant argues in its Reply brief that, even if Plaintiff has established a *prima facie* case, he cannot demonstrate pretext. Defendant, however, has skipped a step here. Defendant has failed to even proffer a legitimate non-discriminatory reason for failing to return Ellsworth to work. *See Hardy*, __ F.3d __, 1999 WL 401722, at *2. Apparently, Defendant thinks that it has proffered such a reason by arguing that Ellsworth had been placed on medical leave until October 1997, and that, when he returned earlier, all APS was required to do, in its opinion, was allow him to interview for vacant positions in the district. Even accepting *arguendo* APS's premise that it was not required to immediately put Ellsworth back to work, APS has failed to explain why he was not hired to any of the vacant positions. APS has thus failed to proffer a legitimate non-discriminatory reason for failing

8

to put Ellsworth back to work. *See Id.* Accordingly, the Court need not reach the question of whether Plaintiff has sufficiently establishedd pretext since Defendant has failed to carry its burden.

Finally, Defendant argues that Plaintiff cannot produce sufficient evidence of intentional discrimination to support his equal protection claim. In this regard, Defendant fails to comprehend the purpose of the *McDonnell-Douglas* burden shifting analysis. As the Tenth Circuit recently observed, "[t]he plaintiff need not present direct evidence of illegal discriminatory animus to survive summary judgment." *Hardy*, __ F.3d __, 1999 WL 401722, at *2. Rather, having established a *prima facie* case of discrimination, and absent a legitimate non-discriminatory reason for the adverse action, Plaintiff has produced sufficient evidence to warrant proceeding on his claims.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment **[Doc. 15]** is hereby **DENIED**.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT COURT JUDGE

Attorney for Plaintiff:
    Peggy Bittick

Attorney for Defendant:
    Gregory Biehler

9